J-S19017-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: N.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 638 EDA 2022 |

Appeal from the Order Entered February 22, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000307-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: N.M.S.-S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 639 EDA 2022 |

Appeal from the Decree Entered February 22, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000441-2021

BEFORE:   PANELLA, P.J., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                    **FILED JULY 15, 2022**

K.S. (hereinafter "Mother") appeals from the order and decree entered

on February 22, 2022, which terminated Mother's parental rights to N.S.

_____

[*] Former Justice specially assigned to the Superior Court.

(hereinafter "Child") and changed Child's permanency goal to adoption.[1]  We affirm.

Child was born in February 2019.  On February 10, 2019, the Philadelphia Department of Human Services (hereinafter "DHS") received a General Protective Services (hereinafter "GPS") report, alleging that, at the time of Child's birth, both Mother and Child tested positive for cocaine and opiates.  On February 21, 2019, DHS obtained an order of protective custody for Child and placed Child in a foster home, with a caregiver who had already adopted Child's older sibling.  N.T. Hearing, 2/22/22, at 6-7.

On March 4, 2019, the trial court adjudicated Child dependent, as Child was "without proper care or control, subsistence, education [], or other care or control necessary for [her] physical, mental, or emotional health, or morals."  Trial Court Decree, 3/4/19, at 1.  The trial court ordered that Child should stay in her current foster home and the court transferred legal custody of Child to DHS.  *Id.*  On that same date, Mother tested positive for cannabis, benzodiazepines, cocaine, and opiates.  *See* Progress Report, 5/20/19, at 1.

On March 4, 2019, the trial court referred Mother to the Clinical Evaluation Unit (hereinafter "CEU") for a drug and alcohol screen, substance use and mental health assessment, treatment monitoring, and five random

---

[1] On February 22, 2022, the trial court terminated the parental rights of Child's biological father, A.S. (hereinafter "Father").  *See* Trial Court Decree, 2/22/22, at 1-2.  Father did not file a notice of appeal from the decree and he is not a party to this appeal.

drug and alcohol screens. Trial Court Order, 3/4/19, at 2. Within CEU's August 16, 2019, Progress Report, CEU noted that Mother: tested positive for cannabis, cocaine, and opiates on May 20, 2019; tested positive for cocaine on June 24, 2019; tested positive for benzodiazepines, cocaine, and opiates on July 16, 2019; and, refused drug testing on July 30, 2019. Progress Report, 8/16/19, at 1.

In the ensuing months, the trial court held a number of permanency review hearings for Child. Of note: following the July 23, 2020 hearing, the trial court found that Mother had moderately complied with the permanency plan and had made "moderate progress toward alleviating the circumstances which necessitated the original placement;" following the December 17, 2020 hearing, the trial court found that Mother had moderately complied with the permanency plan, but had made "minimal progress toward alleviating the circumstances which necessitated the original placement;" and, following the May 13, 2021 hearing, the trial court found that Mother minimally complied with the permanency plan and had made "no progress toward alleviating the circumstances which necessitated the original placement." Trial Court Order, 7/23/20, at 1; Trial Court Order, 12/17/20, at 1; Trial Court Order, 5/13/21, at 1.

On August 6, 2021, DHS filed a petition to involuntarily terminate Mother's parental rights to Child, as well as a petition to change Child's permanency goal to adoption. DHS sought to terminate Mother's parental

rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b). Termination of Parental Rights Petition, 8/6/21, at 1-4.

On February 22, 2022, the trial court held a hearing on DHS's petitions. Mother appeared at the hearing and was represented by counsel. Counsel was appointed to serve as the three-year-old Child's guardian *ad litem* and legal counsel. *See In re T.S.*, 192 A.3d 1080, 1092-1093 (Pa. 2018) (holding "if the preferred outcome of a child is incapable of ascertainment because the child is very young and pre-verbal, there can be no conflict between the child's legal interests and his or her best interests").

During the hearing, DHS presented the testimony of John Loughead, the Community Umbrella Agency's case manager supervisor who had been involved with this case since July 2020. *See* N.T. Hearing, 2/22/22, at 6. Mr. Loughead testified that, after Child's birth, Mother and Child tested positive for cocaine and opiates; as a result, Child was placed in the foster home where she currently resides. As Mr. Loughead testified, the foster home is pre-adoptive and the caregiver previously adopted Child's older sibling. *Id.* at 7.

Mr. Loughead testified that Mother was diagnosed with generalized anxiety disorder, major depressive disorder, and opioid dependence. Because of Mother's mental health and substance abuse disorders, Mr. Loughead testified that the agency created single case plan objectives for Mother; further, Mr. Loughead testified that he had reviewed the objectives with Mother on "[m]any occasions." *Id.* at 8. As Mr. Loughead stated, Mother's

- 4 -

objectives were "to engage in dual diagnosis treatment[2] . . . [,] to abstain from drug use, to complete her forthwith and three random urines at CEU, to complete a [Greater Philadelphia Health Action] dual diagnosis evaluation, to find appropriate housing, to provide a copy of her lease, to provide proof of income and employment, and to attend her supervised visits." *Id.* at 8-9. Mr. Loughead testified that Mother failed to complete a mental health treatment program and repeatedly failed to appear for random drug and alcohol testing. *Id.* at 9-13. Further, following an August 23, 2021 hearing, Mother was ordered to submit to a drug screen and Mother tested positive for cocaine, benzodiazepines, and opiates. *Id.* at 14.

Regarding housing, Mr. Loughead testified: "for many months[, Mother] provided me with an address on Sydenham Ave[nue]. I had scheduled with her a number of times to try to do a walkthrough [of] that home, but she cancelled. Two of the times were, like, right as I was driving there." *Id.* at 15. Mr. Loughead also testified that Mother never provided him with a copy of her lease, despite his "consistent" requests that spanned a year. *Id.* Nevertheless, on the day prior to the hearing, Mother informed him that she had been living with her mother "for about a month." *Id.* at 16.

Mr. Loughead testified that, on the morning of the hearing, Mother finally provided him with proof of employment. Specifically, Mother provided

---

[2] Mr. Loughead testified that "dual diagnosis treatment" consists of treatment for Mother's mental health and substance abuse problems. N.T. Hearing, 2/22/22, at 8-9.

him with a copy of her W-2 form for 2021, which declared that Mother earned $1,500.00 in income during 2021. *Id.*

Mr. Loughead testified that Mother "minimally" complied with her single case plan objectives and "minimally" progressed in alleviating the issues that precipitated the original placement. *Id.* at 22. He "ruled out reunification with [Mother]" because "Mother has not been consistent in engaging in the dual diagnosis, drug and alcohol/mental health treatment, and [Mother] has not had stable employment or stable housing that she's been able to demonstrate with us, and there has been inconsistencies with [child] visitation." *Id.* at 22-23. Mr. Loughead also opined that Child does not have a "child-parent bond with [Mother] at this time" and that Child would not suffer irreparable harm if Mother's parental rights were terminated. *Id.* at 21-22.

Janel McDowell next testified at the hearing. Ms. McDowell testified that she is the Community Umbrella Agency's case manager and has "been on this case for about five, six months." *Id.* at 30. As Ms. McDowell testified, she observed Child's relationship with the foster parent and described the relationship between Child and foster parent as "really good. . . . [Child] goes to her foster parent for all her daily needs and everything that she needs." *Id.* Ms. McDowell testified that Child refers to her foster parent as "Mom," shares her primary parental bond with this foster parent, and looks to the foster parent for care and comfort. *Id.* at 30-31. She testified that it is in Child's best interest to be freed for adoption. *Id.* at 31.

At the conclusion of the hearing, the trial court terminated Mother's parental rights to Child pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b) and changed Child's permanency goal to adoption. *Id.* at 44. Mother filed a timely notice of appeal. She raises two claims on appeal:

> 1. The trial court erred and/or abused its discretion by entering an order on February 22, 2022, involuntarily terminating the parental rights of Mother under [23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), and (8),] in that [DHS] failed to present clear and convincing evidence to support the trial court's decision that termination would best serve the needs and welfare of [Child].

> 2. The trial court erred and/or abused its discretion by terminating the parental rights of Mother pursuant to [23 Pa.C.S.A. § 2511(b),] where DHS failed to present clear and convincing evidence that [involuntarily] terminating her parental rights best served the emotional needs and welfare of [Child] in that reunification was still a viable option.

Mother's Brief at 8.[3]

We review Mother's issues mindful of our well-settled standard of review. "In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence." *In re Adoption of C.M.*, 255 A.3d 343, 358 (Pa. 2021). When applying this standard, appellate courts must accept the trial court's findings of fact and credibility determinations if they are supported by the record. *Interest of S.K.L.R.*,

---

[3] On appeal, Mother does not raise any claim that the trial court erred when it changed Child's permanency goal to adoption. *See* Mother's Brief at 1-33.

256 A.3d 1108, 1123 (Pa. 2021). "Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion." *In re Adoption of L.A.K.*, 265 A.3d 580, 591 (Pa. 2021).

"[A]n abuse of discretion does not result merely because the reviewing court might have reached a different conclusion" or "the facts could support an opposite result." *In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012). Instead, an appellate court may reverse for an abuse of discretion "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* at 826. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings. *Interest of S.K.L.R.*, 256 A.3d at 1123-24.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental "right to make decisions concerning the care, custody, and control" of his or her child with the "child's essential needs for a parent's care, protection, and support." *In re Adoption of C.M.*, 255 A.3d at 358. Termination of parental rights has "significant and permanent consequences for both the parent and child." *In re Adoption of L.A.K.*, 265 A.3d at 591. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so "clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of

the precise facts in issue." *In re Adoption of C.M.*, 255 A.3d at 359 (quotation marks and citations omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act. "Subsection (a) provides eleven enumerated grounds describing particular conduct of a parent which would warrant involuntary termination." *Id.*; *see also* 23 Pa.C.S.A. § 2511(a)(1)-(11). In evaluating whether the petitioner proved grounds under subsection 2511(a), the trial court must focus on the parent's conduct and avoid using a "balancing or best interest approach." *Interest of L.W.*, 267 A.3d 517, 524 n.6 (Pa. Super. 2021). If the trial court determines the petitioner established grounds for termination under subsection 2511(a) by clear and convincing evidence, the court then must assess the petition under subsection 2511(b), which focuses on the child's needs and welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

Mother first claims that the trial court erred when it found that DHS presented clear and convincing evidence to terminate her parental rights under subsection 2511(a). The trial court in this case terminated Mother's parental rights to Child under 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), and (8). However, the petitioner needs to establish only one subsection of 2511(a) to proceed to subsection 2511(b), and we may affirm a decree based upon any valid reason appearing from the record. *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*). Therefore, we will concentrate our analysis on Section 2511(a)(8).

Section 2511(a)(8) provides:

§ 2511. Grounds for involuntary termination

(a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. § 2511(a)(8).

Parental rights may be terminated pursuant to Section 2511(a)(8) if: "(1) the child has been removed from the care of the parent for at least twelve months; (2) the conditions that led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re I.J.*, 972 A.2d 5, 11 (Pa. Super. 2009), *citing In re C.L.G.*, 956 A.2d 999, 1005 (Pa. Super. 2008) (*en banc*). "As this Court has repeatedly indicated, termination under subsection (a)(8) 'does **not** require an evaluation of [a parent's] willingness or ability to remedy the conditions that led to placement of [the] children.'" *Id.*, *quoting R.J.S.*, 901 A.2d 502, 511 (Pa. Super. 2006) (emphasis in original). Instead, subsection (a)(8) "requires only that the conditions continue to exist, not an evaluation

of parental willingness or ability to remedy them." *Id.*, *quoting* **C.L.G.**, 956 A.2d at 1007.

Therefore, the relevant questions are whether the parent has remedied the conditions that led to the removal of the child and whether the child's reunification with that parent is imminent at the time of the termination hearing. *Id.*; *see*, *e.g.*, **R.J.S.**, 901 A.2d at 512 (termination under section 2511(a)(8) was appropriate where the mother was not in a position to parent her children at the time of the termination hearing). "If a parent fails to cooperate or appears incapable of benefiting from the reasonable efforts supplied over a realistic period of time, CYS has fulfilled its mandate and upon proof of satisfaction of the reasonable good faith effort, the termination petition may be granted." **In re A.R.**, 837 A.2d 560, 564 (Pa. Super. 2003) (citation omitted). As we previously stated:

> We recognize that the application of [subsection] (a)(8) may seem harsh when the parent has begun to make progress toward resolving the problems that had led to removal of her children. By allowing for termination when the conditions that led to removal continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while the parent is unable to perform the actions necessary to assume parenting responsibilities. This Court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time, to wit eighteen months, in which to **complete** the process of either reunification or adoption for a child who has been placed in foster care.

**I.J.**, 972 A.2d at 11, *quoting* **C.L.G.**, 956 A.2d at 1005 (emphasis in original).

As the trial court ably explained, DHS presented clear and convincing evidence that Mother's parental rights to Child should be terminated under Section 2511(a)(8):

> [Mother] has clearly not done what she needed to do to reunify with her child. She has not gone to mental health treatment. She has not – as recent as August of 2021 . . . [Mother] tested positive for cocaine, opiates, and benzos.
>
> . . .
>
> [Child] was removed from [Mother] because [Mother] tested positive, and [Child] tested positive for illicit substances. Again, as recent as August of 2021[, Mother] tested positive for cocaine, benzos, and opiates.
>
> Clearly, the conditions that led to [Child] being removed continue to exist. . . . With respect to [Section] 2511(a)(8), it's clearly been over 12 months, and termination of [Mother's] parental rights best serves the needs and welfare of [Child]. . . . [Child] deserves stability – she's been three years in care, and [Mother] has not been able to get it together.

N.T. Hearing, 2/22/22, at 47-49.

We agree with the trial court and conclude that the trial court did not err or abuse its discretion when it determined that DHS had proven, by clear and convincing evidence, the requirements of Section 2511(a)(8). Therefore, Mother's first claim on appeal fails.

Next, Mother claims that the trial court erred when it determined that DHS had satisfied its burden under Section 2511(b). Section 2511(b) declares:

> (b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the

developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

With regard to section 2511(b), this Court has stated:

Once the statutory requirement for involuntary termination of parental rights has been established under subsection (a), the court must consider whether the child's needs and welfare will be met by termination pursuant to subsection (b). *In re D.W.*, 856 A.2d 1231, 1234 (Pa. Super. 2004). In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. *In re C.S.*, [761 A.2d 1197, 1202 (Pa. Super. 2000)].

*In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). We have explained that the focus in terminating parental rights under section 2511(a) is on the parent, but, pursuant to section 2511(b), it is on the child. *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*).

In reviewing the evidence in support of termination under section 2511(b), our Supreme Court has stated as follows:

[I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re*

- 13 -

>***E.M.***, [620 A.2d 481, 485 (Pa. 1993), the Supreme] Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. ***In re K.M.***, 53 A.3d at 791.

***In re: T.S.M.***, 71 A.3d 251, 267 (Pa. 2013).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, section 2511(b) does not require a formal bonding evaluation." ***In re Z.P.***, 994 A.2d at 1121 (citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances . . . where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." ***In re K.Z.S.***, 946 A.2d 753, 762 (Pa. Super. 2008).

A parent's abuse and neglect are likewise a relevant part of this analysis:

>concluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent. . . . Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a de facto beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (citations and quotations omitted). Thus, the court may emphasize the safety needs of the child. *See In re K.Z.S.*, 946 A.2d at 763 (affirming involuntary termination of parental rights, despite existence of some bond, where placement with mother would be contrary to child's best interests). We have stated that "a parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d at 856 (citations omitted).

Here, the trial court found, as a fact, that:

> while there's a relationship between [Child] and [Mother], and [Child] clearly recognizes her mother, that relationship is not a mother-child relationship. [Child] looks to her foster parent to meet her daily needs, which makes sense. She's been there for three years, and that's the person that has been most consistently available for her.
>
> So, [the trial court] find[s] that terminating, involuntarily, [Mother's] parental rights will not cause any detrimental impact to [Child].

N.T. Hearing, 2/22/22, at 49-50.

The record supports the trial court's factual findings. Child came into foster care shortly after her birth. She remained in foster care at the time of the termination of parental rights hearing three years later. She has spent the vast majority of her life with her foster mother, only interacting with Mother sporadically by video conference. Her foster mother is a long-term

resource for Child. Child is bonded with her foster mother, is comfortable in her surroundings, and looks to her for all of her needs. Under these circumstances, we concur with the trial court's conclusion that termination of Mother's rights would not have a negative effect on Child and, at this point in Child's life, would inure to her benefit to provide her with security, love, and stability with her foster mother, who meets her needs and functions as her parental figure. Accordingly, no relief is due.

Having found that the trial court did not err or abuse its discretion in terminating Mother's parental rights under 23 Pa.C.S.A. §§ 2511(a)(8) and (b), we affirm the order and decree entered on February 22, 2022.

Order and decree affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/15/2022